# CASES

# SUPREME COURT OF ILLINOIS.

## SOUTHERN GRAND DIVISION.

### NOVEMBER TERM, 1879.

94   55
47a 545

## THE ILLINOIS AND ST. LOUIS RAILROAD AND COAL CO.

### *v.*

## FRANCIS H. COBB.

1. TRESPASS—*of the plaintiff's possession.* If a party in possession of real estate is wrongfully ousted by another, the latter can not by such wrongful act acquire a possession which it will be a trespass in the former to disturb, provided the re-entry of the person so wrongfully ousted involves no breach of the peace.

2. If a defendant acquires possession of land only by wrongfully ousting the plaintiff, his possession is not lawful, but is unlawful, and the plaintiff may regain possession in a peaceable manner, and if again dispossessed by the defendant, he may maintain trespass for the injury.

3. SAME—*possession sufficient against a wrongdoer.* A person in the peaceable possession suing for a trespass to the freehold can never be put upon proof of his title in order to recover against a wrongdoer having no title.

4. When a person in the peaceable possession of land is ousted by a mere wrongdoer without the authority or command of the real owner, the party in possession not being a tenant, he may recover the full damages done, not only to his possession, but to the land itself, the same as if he were the real owner. The trespasser in such case can not be allowed to show title in another, and thereby mitigate the damages so as to prevent a recovery for all damages

beyond the actual injury to the possession. The rule it seems is different when the plaintiff is a mere tenant.

5. There is a broad distinction between a case where a mere trespasser commits the wrong to the possession of another without title, and where it is done by the owner of the title, or by one authorized by him to commit the trespass. In the last case the person in possession can only recover the damage he has sustained to his possessory right.

6. FORMER RECOVERY—*when a bar to another.* A recovery in trespass by a person in the peaceable possession of land, who is not the owner and is not a tenant of the owner, for dispossessing him and injuring the land, is a bar to any subsequent suit by the real owner for the injury to the soil.

7. PRACTICE IN SUPREME COURT—*passing on facts.* Where the Appellate Court sustains the verdict of a jury as to the damages found on the trial of an action for trespass to land, they depending on controverted facts, the judgment of the Appellate Court as to the right to the damages recovered is final, and this court can not examine the evidence as to the damages.

APPEAL from the Appellate Court of the Fourth District; the Hon. TAZEWELL B. TANNER, presiding justice, and the Hon. JAMES C. ALLEN and Hon. DAVID J. BAKER, justices.

Messrs. G. & G. A. KŒRNER, for the appellant.

Mr. CHARLES W. THOMAS, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

On the first question discussed we have adopted the language of the opinion filed before the petition for a rehearing was presented.

This appeal brings before us for review the record of a judgment of the Appellate Court of the Fourth District. The case was before us at a former term and is reported in volume 82 Ill. 183, where the facts of the case are stated. On the last trial in the circuit court appellee recovered $4379. On an appeal to the Appellate Court that judgment was affirmed, and the case is again brought to this court, and we are now to inquire simply as to the rulings on the law in the last named court, the questions of controverted fact being set-

tled by its decision. (See Laws of 1877, p. 153, sec. 89.) From the finding of the jury and the affirmance of that finding by the judgment of the Appellate Court, we must assume that appellee was in the peaceable possession of the property in controversy and that his possession was violently invaded by appellant without lawful right; that appellee regained possession of the property in controversy, and his possession was again violently invaded by an entry by appellant without lawful right, because there is evidence tending to prove these facts, which the Appellate Court must have found was not outweighed or overborne by the opposing evidence, to have come to the conclusion it reached in affirming the judgment.

The first error of law in the ruling of the court, insisted upon, arises from the refusal of the circuit court to give this instruction: "The law is, that if plaintiff was in possession when he brought his first action, in which he recovered damages, and was wrongfully ousted by defendant, yet he must be in actual possession before he can bring another suit; and if he was not in actual possession at the time the suits in this case were brought, the jury must find for defendant; or, if he were in actual possession, which he had gained for himself, trespassing on the lawful and peaceable possession of defendant, or by fraud, the jury must find for defendant."

When this case was here before, it was said, in discussing this doctrine, and in allusion to *Reeder* v. *Purdy*, 41 Ill. 279, and *Comstock* v. *Henneberry*, 66 Ill. 212, " The fair inference from both of these cases is, that the rules laid down there are not to apply to a peaceable re-entry by a party who has been put out by lawless force. To hold that a party who has by lawless force driven a weaker party from a peaceable possession, has thereby acquired a possession so sacred that the expelled party may not, if he can do so without a breach of the peace, re-enter, for the mere purpose of complying with a mere technical rule of law which prevents him from bringing an action of trespass until he has re-entered, would be carrying the rule to a length never contemplated, and wholly unwar-

ranted by any provision of law, whether statutory or common law."

If, as this instruction assumes, the plaintiff was in possession and was wrongfully ousted by defendant, the latter could not by that wrongful act acquire a possession which it would be a trespass in plaintiff to disturb, provided his entry involved no breach of the peace. The lawful possession of the defendant, on the hypothesis assumed by the instruction, is an impossibility. If the defendant acquired possession only by wrongfully ousting the plaintiff, its possession is not lawful, but is unlawful. The principle is well stated by Judge Cooley, in his recent and valuable work on Torts, page 323. He says: "But if one lawfully entitled to possession can make peaceable entry, even while another is in occupation, the entry in contemplation of law restores him to complete possession, and it is not unlawful for him to resort to such means, short of the employment of force, as will render further occupation by the other impracticable." See, also, the case cited in the note, *Stearns* v. *Sampson,* 59 Me. 568. The instruction was properly refused.

The question discussed as to the weight of evidence in regard to the damages sustained by appellee, is beyond our domain. That was for the Appellate Court only. Whilst there may be some force in appellant's position, still the question was one of controverted fact, and belonged, therefore, exclusively to the Appellate Court to determine.

Another ground is urged, in reference to the question of damages, for a reversal. Appellant gave evidence tending to prove an outstanding title to the property in controversy in the village of Cahokia. And appellant asked, but the court refused to give, this instruction:

"If the defendant has shown that the title to the land described by the declaration, at the time when the trespass is said to have been committed, was outstanding, that is to say, not in the plaintiff, the plaintiff can not recover damages for

an injury that may have been done to the freehold or to the land, soil or sand, but only such injury, if any have been shown, that was done to the possession or property of the plaintiff."

This raises the question whether a mere trespasser may justify his wrong to all but the actual damage done to the possession, by showing a title in a third person. Or, to state the proposition differently, can he mitigate the damages so as to prevent a recovery for all damages beyond the actual injury to this mere possession.

Judge Cooley, in his work on Torts, p. 326, says: "Presumptively, a peaceful possession is always rightful, and the proof of it is sufficient evidence of the title to enable one to recover in ejectment against one subsequently found in possession and who shows no right in himself."

Where lands are in the possession of a tenant, and a trepass is committed on the land, the law is long and well settled that the tenant may sue and recover for the injury he has suffered by reason of the loss he has sustained as a tenant, and the landlord as a reversioner may sue and recover in respect to the injury he has sustained to his reversion. In such a case, there may be two recoveries for injuries to the respective estates, of the tenant and the landlord. This was so held by the British courts at an early day, and the rule has never been disregarded by the courts of that country or by the courts of the various States of the Union, so far as our researches have led us in the investigation of the question. But no such relation exists in this case, and that rule can have no application here.

In the case of *Catteris* v. *Cowper*, 4 Taunt. 547, the plaintiff sued for trespass in entering upon land lying between premises rented by plaintiff, and the river Ouse, by the defendant, and cutting grass. The land bore grass which every one cut who chose, until two years before the action was brought, and plaintiff's only title was, that two years previously he had

taken possession and twice mowed the grass, and afterwards pastured a cow on the strip.

The defendant's case was, that the plaintiff, when he first cut the grass, had boasted that he cut hay on land for which he paid neither rent nor taxes; that in a former year he had purchased the hay cut by another man on the ground, and that a few years before the trial, in repairing the boundary fence of his farm, plaintiff had excluded, by his fence, the land in question, and had frequently shown to other persons the boundaries of his farm as excluding this land; but HEATH, who tried the case, excluded this evidence offered by defendant, and the plaintiff recovered. Afterwards, on a rule to show cause why the verdict should not be set aside and a new trial granted, on a trial in the Common Pleas, the rule was discharged. The court said: "The case was decided rightly upon the merits. The defendant stands neither on any former possession of his own nor derives title under the possession of any other person. His only objection to the plaintiff's recovery is, that he has not proved the title he stood on; that this land was parcel of the farm he held; but no answer is given to the fact of his prior possession. The merits are clearly against the defendant." The rule announced seems to have been so clear as to have called for the reference to no authority or any reasoning to establish the rule.

In *Allen* v. *Rivington*, 2 Saund. 111, and *Doe ex dem. Borough* v. *Reade*, 8 East, 356, it was held, that a party could recover in ejectment, or defend in such an action, on a former mere naked possession. In the case of *Day* v. *Alverson*, 9 Wend. 223, it was held, that a plaintiff claiming the premises in fee is entitled to recover, although he only show title by possession. In the case of *Jackson ex dem. etc.* v. *Town*, 4 Cow. 602, it was held, that actual possession is *prima facie* evidence of legal title to the premises for which ejectment is brought; and it is one of the most familiar rules, that any person in the actual possession of land may recover in trespass against a wrongdoer. In fact, the plaintiff must have

the actual possession, or the legal title which draws to it the legal possession, before he can recover in trespass.

In *Graham* v. *Peat,* 1 East, 244, it was held, where one was in possession of glebe lands under a lease void under the statute by reason of the non-residence of the rector, that he might nevertheless recover in trespass upon his possession against a wrongdoer. At *Nisi Prius,* the plaintiff, on proof of the absence of the rector the length of time necessary to render the lease void, was nonsuited; but the Court of King's Bench reversed the judgment, holding that plaintiff was entitled to recover, as the defendant had shown no title, but was only a wrongdoer. Lord KENYON said: "Any possession is a legal possession against a wrongdoer. Suppose a burglary committed in a dwelling house of such a one, must it not be laid to be his dwelling house notwithstanding the defect of his title under the statute?"

The same question was again before the court in *Chambers* v. *Donaldson,* 11 East, 65. In this last case a plea was filed that the soil and freehold were the property of one Postman, and that defendants, as his servants and by his command, broke and entered the close. To this plea plaintiff replied, admitting that Postman was the owner of the soil and freehold, etc., and traversed that they were the servants, etc., and by his command committed the trespass in the manner and form as in the plea mentioned. A demurrer was filed to this replication, and causes were assigned that though the replication admitted that the dwelling house was the soil and freehold of Postman, yet by his replication he stated that one Green demised the dwelling house to plaintiff to hold as therein mentioned without showing any legal title to do so. And because plaintiff admitted Postman to be the owner of the dwelling house but had not deduced any title from him to Green, and that plaintiff had attempted to put in issue an immaterial fact, etc.

On the argument it was conceded on both sides, that by showing that the title was in a third person and defendant had

entered by his command, the plaintiff, to recover, would have been required to show title in himself. And it was claimed that the authority to enter, averred in the plea, was not traversable, but by merely showing title in another than the plaintiff, he was barred of a recovery. But the judges concurred in holding that the command of the owner to enter was traversable. Lord ELLENBOROUGH said: "Unless the command be transversable it will be sufficient for a mere wrongdoer, who has invaded the quiet possession of the plaintiff, to plead title in another and under authority from him, although that other did not question the plaintiff's possession. Nay, * * it might be contended that the same defence could be set up against a plaintiff who had been in possession for twenty years, and this monstrous consequence would ensue, that the wrongdoer would protect himself under a title which the party himself could not assert in any possessory action. But since it has been settled * * * that trespass may be maintained by a person in possession, against a wrongdoer, we are called upon to strip the wrongdoer of this shield." See, also, *Harker* v. *Birkheck*, 3 Burr. 1556. Other English cases might be cited in support of the doctrine if it was deemed necessary.

In Sedgwick on Damages, 149, it is said: "It is well settled in England, and generally in the United States, that, to entitle the plaintiff to bring an action of trespass *quare clausum fregit*, possession in fact is indispensable; and as against a wrongdoer, bare possession is sufficient." The rule is sustained by the cases of *First Parish, etc.* v. *Smith*, 14 Pick. 297; *Branch* v. *Dane*, 18 Conn. 233; *Curtis* v. *Hoyt*, 19 id. 154. In this last case, it was held, that the plaintiff in trespass, having the sole and exclusive possession, may recover against the wrongdoer the whole damage done by him, though the conveyance from some of those under whom he claims was defective.

In the case of *Harker* v. *Dement*, 9 Gill, 7, it was held, that in an action by a termor against his reversioner, the measure of damages is the actual loss sustained by the lessee; but in

such an action against a stranger and wrongdoer, the termor is treated as the absolute owner of the property, and is held to be entitled to recover its full value.   The general rule is announced in *Webb* v. *Sturtevant*, 1 Scam. 181.   See, also, *Gilbert* v. *Kennedy*, 22 Mich. 5.   It will be observed that in none of these cases is anything said as to showing an outstanding title in mitigation or reduction of damages; nor have we found any case, nor has appellant's counsel referred us to any, which has so held, unless it is where the plaintiff was a tenant.   If such cases exist, we and counsel have been unable to find them; nor do the text books suggest any such distinction, whilst they do where the plaintiff is a tenant, or holds under another; that he only has an action for injury done to his mere possessory right, and the landlord, or reversioner, for all damage done to the reversion.   If the rule is different from that stated in the adjudged cases and commentators to whom we have referred, we should have found the distinction between the rights of the true owner and the person in possession—the presumptive owner—stated in some adjudged case.

There is a broad distinction between a case where a mere trespasser commits the wrong without title, and where it is done by the owner of the title, or by one authorized by him to commit the wrong.   In this latter case the person in peaceable possession can only recover the damage he has sustained to his possessory right.   But a person in peaceable possession, suing for a trespass to the freehold, should never be put upon proof of his title to recover against a wrongdoer having no title.   Being in possession the law presumes him to be the owner, and will not permit a wrongdoer to question or call upon him to produce his title to sustain his action.

When this case was previously before us, it was held that the prior peaceable possession of Cobb claiming title was sufficient to warrant a recovery as against a wrongdoer.   And in that case there was an instruction asked and refused, which was similar in principle to this one, and whilst it was not

commented on it was regarded as vicious. This question was then argued, and in disposing of it, without referring to the instruction, it was said: "The whole case must turn upon the question of the date and nature of the several possessions set up by the parties respectively." The instruction was thus condemned. Had it been held good, its refusal would have been noticed as a ground for reversal.

To hold that a wrongdoer may put a plaintiff in peaceable possession upon the proof of his title, to enable him to a recovery, would be a harsh rule. If there should be any technical objection to any link in his chain of title he would fail, although no other person was claiming title and might never claim. His title might be clearly equitable, unclaimed and unchallenged by the person holding the legal title, and yet, if such a rule should prevail, the equitable owner and occupant might have his property destroyed and only recover nominal damages. Many titles are defective in the want of proper acknowledgments or other mere technical defects, and yet no one claims or challenges the title of the occupant claiming to be the owner, and shall it be said, that he shall not be protected against a reckless, lawless wrongdoer? The wrongdoer should in justice make recompense to some one for the wrong and loss he has inflicted upon the property, and no reason is perceived why he should have a choice as to whom he will pay the damages. A recovery by the occupant is a bar to all future recoveries, and it in nowise concerns him who shall have the benefit of that recovery. *Benjamin* v. *Stumph*, 13 Ill. 466, *Lyle* v. *Baker*, 5 Binn, 457, *Chamberlin* v. *Shaw*, 18 Pick. 278, and *White* v. *Webb*, 15 Conn. 302, show a recovery as against a wrongdoer may be had of the full value when a recovery is had.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*