**TAVITOFF et al. v. STEPOVICH.**
No. 8437.

Circuit Court of Appeals, Ninth Circuit.
June 21, 1937.

J. G. Rivers and John L. McGinn, both of Fairbanks, Alaska, for appellants.

Louis K. Pratt, of Fairbanks, Alaska, for appellee.

Before WILBUR, GARRECHT, and MATHEWS, Circuit Judges.

WILBUR, Circuit Judge.

On September 25, 1935, Mike Stepovich, the appellee, leased a part of a mining claim known as the Eastern Star Association claim to Alex Tavitoff and Ed Kupoff, until September 25, 1937. Ed Kupoff withdrew from the lease by the consent of the lessor, Mike Stepovich, and the lessee, Alex Tavitoff, and the other plaintiffs and appellants, Nick Romanoff, Axel Carlson, and Jack Huhoff were substituted as lessees in place of Ed Kupoff. Appellants took possession of the mining claim under the lease and operated the same. The court found that appellants "continued in such possession at all times thereafter."

### Amended Complaint.

On May 14, 1936, appellants filed an amended complaint[1] in this action alleging that they were the owners of and in the possession of the Tavitoff Association placer mining claim and of a certain ditch and water right thereto appertaining; that the defendant-appellee had no right to use such waters or ditch and that on May 12, 1936, appellee unlawfully entered upon the mining claim and cut and destroyed the ditch and diverted the water therefrom and placed an armed guard where the ditch was cut and prevented appellants from re-

pairing the same; and that the use of the water was necessary in order to enable appellants to operate their mining property. They asked that the appellee be enjoined from interfering with the appellants' use of the ditch and water flowing in the creek at the point of diversion, and for $500 damages.

### Answer to Amended Complaint.

The appellee filed an amended answer on May 29, 1936, containing a general denial and an "affirmative defense to the plaintiffs' amended complaint" wherein it was alleged that the appellants had on September 25, 1935, leased a part of the Eastern Star Association placer mining claim and the water rights appurtenant thereto and certain mining machinery thereon from the appellee; that they had taken possession of the property and operated it under the lease; that they had extracted about $6,000 in gold and in violation of the terms of the lease had not accounted therefor, and that on the 11th of May, 1936, they had attempted to relocate the mining claim leased by them by including the same within the exterior boundaries of a larger claim which they described in the location notice as the Tavitoff Association claim containing 80 acres. It was alleged that thereby "the plaintiffs have forfeited all their rights under said lease and are estopped to deny defendant's title in and to the Eastern Star Association mining claim and the attempted location of the Tavitoff Association hence was and is void." The appellee prayed for judgment that the appellants take nothing, that the mining lease be canceled, that the attempted location of the Tavitoff Association be canceled and held for naught, and for costs and all other and appropriate relief to which he might be entitled in equity.

### Demurrer to Amended Answer.

On June 12, 1936, appellants' demurrer to appellee's amended answer came on for hearing, whereupon the appellants "interposed a motion for an order of dismissal at plaintiffs' costs which motion was denied." The court thereupon overruled appellants' demurrer.

### Appellants' Motion for Voluntary Nonsuit.

Appellants' counsel thereupon renewed his motion for an order of dismissal of appellants' suit at appellants' costs which

---

1 The record does not disclose when the original complaint was filed

was denied and the court directed that appellants file their reply to the appellee's answer on June 13, 1936.

### Appellants' Reply to Amended Answer.

On that date appellants filed a reply to appellee's amended answer denying his affirmative allegations and in addition alleging the execution of the lease to them by appellee, but alleging that the lease was procured by false representations on the part of the appellee as to his title and right of possession and as to the existence of pay dirt at the bottom of the working shaft. The appellants alleged that on May 10, 1936, appellee served a notice upon them that the lease was terminated and forfeited and that the appellee thereupon caused the deputy United States Marshal to take possession of the dump and mine; that on May 11th appellants located the Tavitoff Association .placer mining claim, which included within its exterior boundaries the Eastern Star claim and on the 13th of May made discoveries of gold thereon, one within and one without the leased property. They alleged that thereafter they filed a certificate of location and that on May 28th appellants filed an amended certificate of location. In support of their location appellants alleged that on May 11, 1936, the ground thus located was unappropriated public mining ground and was open for location and that "plaintiffs made a valid location of said claim and took peaceable possession thereof on said 11th day of May, 1936, and since that time have been the owners thereof."

. In support of their allegation that the ground was open for .location they alleged that in April, 1922, the appellee, Stepovich, had attempted to make a location of the Eastern Star Association claim, but that the certificate of location failed to mention any natural object or monument in connection with said alleged location, as required by law; that the defendant never made a discovery of gold on the claim and failed to do the assessment work thereon for the years 1924, 1926, 1927, 1929, 1930, 1931, 1932, and 1934. They also alleged that there were other defects in the location. Similar allegations were made with reference to No. 1 Slippery claim.

### Appellee's Demurrer to Reply to Amended Answer.

The appellee demurred on June 18, 1936, to the affirmative matters alleged in the appellants' reply upon the ground that the facts therein stated were insufficient to constitute a reply.

### Appellants' Motion for Voluntary Nonsuit Renewed.

On June 16th appellants again moved for a judgment of voluntary nonsuit with costs in favor of the appellee, under section 3668, C.L.A. This motion was denied on the same day and before a motion by the appellee to strike out the reply to his amended answer was considered and denied. The case was thereupon set for trial for June 22, 1936.

### Motion for Voluntary Nonsuit Renewed on Trial.

On that date appellants renewed their motion for judgment of nonsuit and dismissal of the costs in favor of the appellee. This motion was again denied, whereupon appellants announced that they would offer no evidence in the case. The appellee introduced evidence and the appellants participated in the trial by objecting to the introduction in evidence of a map, and by waiving argument, whereupon the court announced its decision in favor of the appellee and directed the preparation of findings. Before the findings were signed, the appellants were given the opportunity to object thereto and submitted written objections to appellee's proposed findings, which were overruled on July 18, 1936. The findings were signed on July 18, 1936, and the "judgment and decree" was signed and entered July 24, 1936. A "bill of exceptions" was proposed October 17, 1936, and settled November 13, 1936. Appeal was allowed October 23, 1936.

Before dealing with the contentions of appellants in detail, we summarize the legal effect of the pleadings:

The complaint in this case was an action to enjoin a trespass upon appellants' water right which they alleged was appurtenant to mining claims they alleged they owned. There is no prayer for the quieting of appellants' title and no allegation that the appellee claimed a right adverse to appellants in the property. The appellee's answer denied appellants' ownership of either the mining claim or the water appurtenant thereto and affirmatively alleged that the appellants were tenants of the appellee in possession under a lease. Appellee alleged a breach of the terms of the lease and the ouster by virtue of an assertion of an adverse title. Under these allegations, the appellee was entitled to and

was asserting the right to possession of property. In addition, the appellee prayed that the lease might be canceled, but this claim was based upon the allegation that appellants had breached the lease and that the appellee had elected to treat the breach as terminating the lease and desired to have the court act on the theory that the lease was terminated and hence restore him to possession. Although the appellee also alleged the relocation of the property by the appellants and prayed that the relocation be declared invalid, and thus by these allegations and his prayer sought to invoke the equitable powers of the court to quiet his title against this relocation, no grounds were alleged for such cancellation other than the fact that the ground was leased to appellants by the appellee and hence that the tenants were estopped to deny his title while they remained in possession of the leased premises. This rule thus invoked, although well established, is not a basis upon which the landlord can secure a decree in equity quieting his title against the adverse claims of his tenant although the tenant must surrender possession before he can set up his adverse title. We conclude that the allegations of the answer were insufficient as a suit to quiet title; that the pleading must be considered as asserting a right to possession; and that appellee in effect set out a cause of action in ejectment,[2] as a counterclaim.

The first questions presented by the assignments of error which require consideration are those assignments based upon the refusal of the court to permit appellants to take a voluntary nonsuit. Section 3668, C.L.A., provides, among other things, for voluntary dismissal, or nonsuit, by a plaintiff "at any time before trial, unless a counterclaim has been pleaded as a defense."[3]

Apparently the trial court denied the appellants' repeated motions to dismiss and for nonsuit on the ground that appellee had filed a counterclaim within the meaning of this section.

Appellants contend in their brief that under section 3863, C.L.A.,[4] "in order to constitute a counterclaim, the defendant must have a cause of action in equity. The facts alleged must confer upon the court equitable jurisdiction. Burrage v. Bonanza, etc., Co., 12 Or. 169, 173, 6 P. 766; Dove v. Hayden, 5 Or. 500, 501; Sears v. Martin, 22 Or. 311, 29 P. 890; Hanna v. Hope, 86 Or. 303, 168 P. 618."

The difficulty with this proposition, however, is that the law of Alaska, although in many respects derived from the law of Oregon, differs therefrom in this very particular in that the Oregon Code preserves a distinction between the forms of equitable and legal actions (Burrage v. Bonanza, etc., Co., supra), while such distinction is expressly abolished by the Alaskan Code of Civil Procedure (cf. Carter's Codes of Alaska, § 1, p. 145, and section 1, Code Civ.Proc.Olson's Oregon Laws). In Madden v. McKenzie, 144 F. 64, 66, this court, speaking through Judge Gilbert, said:

"The Code of Civil Procedure of Alaska, while in the main it follows closely the Code of Oregon, differs essentially from it in the particular that it provides:

"'The distinction between actions at law and suits in equity and the forms of all such actions and suits are abolished. There shall be but one form of action for the protection of private rights and the redress and prevention of private wrongs, which is denominated a civil action.' Carter's Codes of Alaska, p. 145, § 1 [Code Civ.Proc.]."

---

[2] Where the tenant renounces his landlord's title and sets up an adverse claim to the premises it constitutes an ouster. 35 C.J. 1212, §§ 539, 614 et seq.; 36 C. J. 631, § 1813; Storrow v. Green, 39 Cal. App. 123, 178 P. 339; Van Winkle v. Hinckle, 21 Cal. 342.

[3] "Sec. 3668. *When judgment of nonsuit may be given.* A judgment of nonsuit may be given against the plaintiff as provided in this chapter—

First. On motion of the plaintiff, at any time before trial, unless a counterclaim has been pleaded as a defense;

Second. On motion of either party, upon the written consent of the other filed with the clerk;

Third. On motion of the defendant, when the action is called for trial and the plaintiff fails to appear, or when, after the trial has begun and before the final submission of the cause, the plaintiff abandons it, or when, upon the trial, the plaintiff fails to prove a cause sufficient to be submitted to the jury."

[4] "Sec. 3863. *Counterclaim of defendant.*

"The counterclaim of the defendant shall be one, upon which an action might be maintained by the defendant against the plaintiff in the action; and in addition to the cases specified in the subdivisions of section 3422 it is sufficient if it be connected with the subject of the action."

▅ In view of this distinction between the Oregon law and the Alaskan law, the provisions of section 3863, C.L.A.1933, must be contrued as permitting a legal counterclaim as well as an equitable one in an action in equity, although the section appears in a chapter devoted to "general provisions relating to actions of an equitable nature." That is to say, the provision of section 3863, C.L.A., authorizing a defense by a counterclaim where an action might be maintained by the defendant against the plaintiffs in the action must be construed to include any action which could be maintained by the defendant against the plaintiffs whether at law or in equity "if it be connected with the subject of the action." Such has been the interpretation placed upon similar legislation in states where the distinction between law and equity forms of action has been abolished. Carpentier v. City of Oakland, 30 Cal. 439; Taylor v. McLain, 64 Cal. 513, 2 P. 399; 1 Cal.Jur. p. 312, § 6; Crary v. Goodman, 12 N.Y. 266, 64 Am.Dec. 506; Hearn v. Leary, 125 Misc. 446, 211 N.Y.S. 668; Id., 215 App.Div. 735, 212 N.Y.S. 828; Schenectady Hold. Co. v. Ashton (Sup.) 197 N.Y.S. 476; Central Ice Cream & Candy Co. v. Home Ins. Co., 171 S.C. 162, 171 S.E. 797; Tracy Development Co. v. Empire Gas & Elec. Co. (Sup.) 189 N.Y.S. 836.

▅ Appellants contend that the denial of their motions for nonsuit deprived them of the right to a jury trial on the question of their title and right to possession. Appellants made this contention in their objections to the court's finding of fact and conclusions of law claiming that the court sitting as a court of equity was without jurisdiction to determine title or right of possession to the property. This objection came too late. If appellants contended that the counterclaim set up was in effect an action at law triable by a jury, it was incumbent upon them to demand trial of that issue before a jury if they so desired. By their appearance at the trial without such a demand the right to a jury trial was waived. Duignan v. United States, 274 U.S. 195, 47 S.Ct. 566, 71 L.Ed. 996; Kearney v. Case, 12 Wall. 275, 283, 20 L.Ed. 395; Gilman v. Illinois & M. Tel. Co., 91 U.S. 603, 614, 23 L.Ed. 405; Perego v. Dodge, 163 U.S. 160, 166, 16 S.Ct. 971, 41 L.Ed. 113.

▅ Appellants contend in their brief that appellee's answer did not constitute a counterclaim because not connected with the subject of appellants' action; that "the subject of the action is not the property which is affected by the trespass, viz, the mining claim, ditch, and the right to use the water, but the illegal acts of defendant which plaintiffs sought to enjoin."

▅ This is too narrow a view of what constitutes the subject of the action. The subject of the action in the case at bar was the right to the possession of certain water rights appurtenant to the land. In cases where specific property is involved, the subject of the action has been considered as the property itself. See Stillwell v. Duncan, 103 Ky. 59, 44 S.W. 357, 39 L.R.A. 863; First Nat. Bank of Snohomish v. Parker, 28 Wash. 234, 68 P. 756, 92 Am. St.Rep. 828. In the case at bar it is clear that as appellee by his answer sought to establish his right to the possession of the same property to which the appellants claimed the right to possession, the cause of action alleged in the answer was connected with the subject of appellants' action.

Appellants contend that appellee having failed to designate the affirmative allegations in the answer a counterclaim cannot contend that the answer amounted to a counterclaim.

▅ There is no merit in this contention. Although the appellee did not name his answer as pleaded a counterclaim, he did designate it as an affirmative defense and concluded it with a prayer for a judgment granting the desired relief. It was thus recognizable as a counterclaim. See National Bank of Rochester v. Erion-Haines Realty Co., 213 App.Div. 54, 209 N.Y.S. 522; American Guild of Richmond v. Damon et al., 186 N.Y. 360, 78 N.E. 1081. The rule that the defendant in his answer should clearly indicate that affirmative allegations are intended as a counterclaim is to prevent the plaintiff from being misled by the failure to so designate it and thus to fail to reply to such affirmative allegations. See Babcock v. Maxwell, 21 Mont. 507, 54 P. 943. No such situation is presented in the case at bar. The repeated rulings of the trial court denying appellants' motion to dismiss fully advised them of appellee's contention that the affirmative defense was in fact a counterclaim. A reply was filed. See on the general subject Pomeroy's Code Remedies (5th Ed.) § 748.

Appellants contend that the allegations in appellee's answer were insufficient in an action to recover possession of real property under the provisions of section 3763, C.L.A.[5] (under chapter 99, p. 753, "Actions to recover possession of real property"), in that appellee failed to allege that he had a legal title or right to possession at the time the answer was filed. Bingham v. Kern, 18 Or. 199, 23 P. 182; Chance v. Carter, 81 Or. 229, 158 P. 947.

The allegations in appellee's answer show that the appellee was entitled to the possession of the property at the time he filed his counterclaim, because of the lessees' wrongful acts.

Appellants contend in their brief that they failed to state a cause of action in their complaint because their description of the ditch and claim, with which they sought to enjoin the appellee from interfering, was uncertain, indefinite, and vague; that "the right to interpose a counterclaim depends upon the existence of a cause of action in plaintiffs and where it appears that the plaintiffs have no cause of action defendant cannot recover upon a counterclaim." There is no merit in this contention. The Alaskan Code does not require as a prerequisite to a defendant's right to file a counterclaim that the facts the plaintiff alleges as constituting a cause of action must in fact do so. Upon the filing of the plaintiffs' complaint alleging facts which he claims constitute a cause of action, the defendant is entitled to file a counterclaim as permitted by the Code in addition to any defenses he may have. Pomeroy on Code Remedies (5th Ed.) p. 991, § 615, 739.

By assignments of error appellants challenge the findings of fact and conclusions of law of the trial judge upon the ground that they are without foundation in the record. Without entering into details concerning the assignments of error, it is sufficient to say that appellants challenge the right of the court to render the judgment declaring that the appellee is the owner of the placer mining claim leased by him to the appellants and adjudging the Tavitoff Association placer mining locations to be invalid and void. This judgment went beyond the right of the appellee to possession of the leased premises and was not justified by either the pleadings or the evidence, both of which are based on the theory that the appellee owned the property on the date the lease was executed and that the lease estopped the plaintiffs from thereafter disputing the title of the landlord.[6] Upon the trial the appellee supplemented the evidence as to the lease by testifying generally that he was the owner of the property, but appellee relied entirely upon the lease to establish the invalidity of the appellants' claims under the relocation notices.

From the foregoing, it follows that the judgment of the court awarding possession to the appellee was correct. That portion of the judgment which purports to quiet the appellee's title by declaring that the Tavitoff Association placer mining claim is invalid and void in so far as it conflicts with said Eastern Star Association placer mining claim and appellee's ditch and water right and enjoining the appellants from in any way interfering with appellee's possession of the Eastern Star Association claim and ditch and water right was erroneous. See VanWinkle v. Hinckle, 21 Cal. 342.

The judgment is modified by striking out paragraph I of the judgment which provides as follows: "That the said Tavitoff Association placer mining claim is invalid and void insofar as it conflicts with said Eastern Star Association placer mining claim and defendant's said ditch and water right." The judgment is further modified by striking out the last part of paragraph II of the judgment which provides as follows: "And the plaintiffs are hereby enjoined from in any way interfering with the possession of said defendant in and to said Eastern Star Association claim and ditch and water right." As thus modified, the judgment is affirmed.

---

[5] Section 3763, C.L.A., provides: "What to be pleaded in complaint.

"The plaintiff in his complaint shall set forth the nature of his estate in the property, whether it be in fee, for life, or for a term of years, and for whose life, or the duration of such term, and that he is entitled to the possession thereof, and that the defendant wrongfully withholds the same from him to his damage in such sum as may be therein claimed. The property shall be described with such certainty as to enable the possession thereof to be delivered if a recovery be had."

[6] 35 C.J. 1232, § 575, stating, "Where, however, the landlord not only seeks possession but asks that the title be invested in him, the tenant is not estopped from disputing the landlord's title and may set up his own superior title * * *," citing, among other cases, Hambey v. Wise, 181 Cal. 286, 184 P. 9.